UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff | ) | Criminal No. 04-114-13 (RBW) |
| v. | ) | |
| | ) | UNDER SEAL |
| JUAN CARLOS GASCA LEGARDA | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SEVERANCE OF DEFENDANTS**

The United States, by and through Patrick Hearn, Trial Attorney, Department of Justice Criminal Division, Narcotic and Dangerous Drug Section, hereby files this response in opposition to Defendant Juan Carlos Gasca Legarda's (Gasca) Motion for Severance of Defendant, filed on July 10, 2007. In his motion to sever, Gasca argues that his trial should be severed from that of his co-defendants because there exists an inadequate disparity of evidence between him and the other co-defendants which would create a possibility of prejudice if there was a joint trial or if "Bruton" type statements exist where Legarda is named as a co-conspirator. For the reasons set forth below, Legarda's Motion for Severance of Defendants should be denied.

**I.   Factual Background**

On March 2, 2005, Gasca and his two co-defendants, Huber Anibal Gomez Luna (Gomez) annd Fredy Castillo Carillo (Castillo), were indicted by a federal Grand Jury in the District of Columbia with Conspiracy to Manufacture and Distribute Five Kilograms or More of Cocaine Intending and Knowing that the Cocaine will be Unlawfully Imported into the United States in

1

violation of Title 21, United States Code, Sections 959 and 960.

The charges in this case arise from evidence obtained during an investigation which revealed that Gasca and his co-defendants are members of a cocaine trafficking and transportation organization known as "Los Mellos."  This organization operated in and around the north coast of Colombia, South America trafficking in cocaine intended for transportation to the United States. "Los Mellos" transported large loads of cocaine from cocaine laboratories in the Sierra Nevada Mountains of northern Colombia to the coastal areas of northern Colombia, then to Central America and Mexico eventually destined for the United States.  "Los Mellos" is known to associate with an organization known as United Self-Defense Forces of Colombia (AUC)[1].  The AUC controlled virtually every aspect of drug trafficking on the northern coast of Colombia including allowing and assisting "Los Mellos" in that organization's cocaine trafficking and transportation activities.

The evidence against Legarda and his co-defendants consists of seizures of cocaine, surveillance, Colombian court-authorized intercepted telephone conversations in Colombia, and cooperating and/or government witnesses.  The evidence from the investigation shows that from at least 2004 to the present, Legarda along with his co-defendants continually transported hundreds of kilograms of cocaine, intended for transport to the United States, using "go fast"or *lanchas rapidas* boats from locations in northern Colombia to transhipment points in Central America.  From Central America the cocaine is transported to final destinations in the United States.

---

[1] On September 10, 2001, the U.S. Department of State designated the AUC as a Foreign Terrorist Organization under U.S. law.

Specifically, Gasca is a logistics coordinator for "Los Mellos."  Evidence shows that Gasca unloaded the trucks of cocaine from the nearby Sierra Nevada Mountains and placed the cocaine shipments on "go fast" boats, which were specifically designed to hold a ton or more of cocaine at a time.  Moreover, these boats are typically outfitted with two to four high performance outboard engines each, enabling the boats to travel long distances at relatively high speeds, even when fully loaded.  On occasion Gasca had also personally purchased supplies for the crews of the "go-fast" boats before they left to transport loads of cocaine.

Gomez is the leader of the "Los Mellos" cocaine trafficking organization. As the leader of the "Los Mellos" Gomez would organize shipment of cocaine, financing for the cocaine purchase and payment for the transportation of the cocaine.  Gomez acted as the director of all aspects of the drug trafficking, he directed and supervised both Castillo and Gasca in their activities.

Castillo is a coordinator for the "Los Mellos".   In that position Castillo coordinates the operations of cocaine processing laboratories in Northern Colombia near Santa Marta.  Castillo also coordinates and assists the transportation of cocaine from the laboratories to "go-fast" boat loading locations on the north coast of Colombia.

## II.     Argument

Defendants were properly joined at indictment under Rule 8(b).  On July 10, 2007 defendant Gasca  moved to sever his trial from that of his co-defendants pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure.

According to Rule 8(b) of the Federal Rules of Criminal Procedure:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions,

constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All of the defendants need not be charged in each count.

Fed. R. Crim. P. 8(b).

The interests of judicial economy create a preference for joinder of trials where multiple defendants are indicted together.  See Zafiro v.United States, 506 U.S. 534, 537 (1993).  A joinder of multiple defendants in one trial can occur when there is a "logical relationship" between the series of acts or transactions.  "Such a logical relationship may be shown by the existence of a common plan, scheme or conspiracy."  United States v. Sarkisian, 197 F.3d 966, 976 (9th Cir. 1999); see also United States v. Brown, 823 F.2d 591, 598 (D.C. Cir. 1987) (finding that RICO conspiracy charges should be joined under Rule 8(b)).  Furthermore, the D.C. Circuit has ruled that the joinder of defendants and charges is favored in conspiracy trials.  See Zafiro v.United States, 506 U.S. 534, 537 (1993).

In this case, the conspiracy to transport cocaine from Colombia to Mexico and the United States encompasses all defendants.  This indictment connects all aspects of the drug trafficking organization, and the evidence shows the logical relationship between Gasca and his co-defendants.  Each defendant was involved in a specific step of the cocaine shipment - Gomez as the overall leader, Castillo as manager of the cocaine laboratories and coordinating the shipping of the cocaine from the lab to the "go-fast" boats, and Gasca as logistics director charged with loading the cocaine from the laboratories onto the "go-fast" boats.  The defendants at various times and locations work with and in conjunction with each other.  The evidence of their cocaine trafficking activities are so inexplicably intertwined that those activities would be presented as evidence even if the defendants were tried separately.  All defendants listed in the indictment participated in the

same series of drug trafficking acts/transactions, and each defendant had his own role within the overall conspiracy. Because of the interdependence of the defendants' roles in the overall conspiracy and their logical relationship, joinder of the defendants under Rule 8(b) is appropriate.

### A. No disparity of evidence exists between Gasca and the other co-defendants to warrant a severance.

Gasca argues that he would be prejudiced at a joint trial because there exists an inadequate disparity of evidence between him and the other co-defendants. However, severance on the basis of disparity of evidence is required only in the "most extreme cases." United States v. Rocha, 916 F.2d 219, 229 (5th Cir. 1990); see also United States v. Phibbs, 999 F.2d 1053, 1067 (6th Cir. 1993)  However, merely showing that there is more evidence or charges against one defendant or that the evidence is stronger against one defendant than the others is insufficient to warrant severance. Id. Indeed, "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Zafiro, 506 U.S. at 540; see also United States v. Manner, 887 F.2d 317, 324 (D.C. Cir. 1989). Rather, a court should sever a joint trial where evidence against one defendant is far more damaging than the evidence against another defendant. United States v. Gray, 292 F. Supp.2d 71, 86-88 (D.D.C. 2003). And a defendant is not entitled to severance in order to avoid the "spillover" effect of evidence against other defendants where there is substantial independent evidence of each defendant's involvement in the conspiracy. United States v. Tarantino, 846 F.2d 1384, 1398 (D.C. Cir.1988).

Gasca argues that because he is named in fewer conspiracy counts than his co-defendants

he is entitled to severance because he will be unduly prejudiced by the evidence produced against his co-defendants. However, even where a defendant played a minor role in a much broader conspiracy, the D.C. Circuit has rejected a defendant's arguments requesting severance. See United States v. Butler, 822 F.2d 1191, 1194 (D.C. Cir. 1997) (holding that defendant was not entitled to severance even though he was named in only four of seventeen counts and in only eight of forty-nine overt acts alleged to be in furtherance of conspiracy); see also United States v. Harris, 908 F.2d 728, 737 (11th Cir. 1990) (holding that defendant named in only 1 of 74 overt acts listed in a conspiracy did not show compelling prejudice to authorize reversal). The court in Butler stated that the number of charges and overt acts demonstrate no less involvement by the defendant than any of his co-conspirators and does not necessarily create a great disparity of evidence . See 822 F.2d 1191, 1194.

Furthermore, in Tarantino the court said that

"once each [defendant] was tied to the conspiracy, the acts of each conspirator in furtherance of the conspiracy's aims were attributable to all. The evidence and other charges were substantially overlapping, but the overlap was caused by the involvement of each appellant. In these circumstances severance is not required."

846 F.2d at 1399.

Courts have continually held that clear cautionary jury instructions allow the jury to properly compartmentalize evidence as to each defendant avoiding undue prejudice or evidentiary spillover. See Zafiro, 506 U.S. at 540; see also Tarantino, 846 F.2d at 1398 (holding that barring a dramatic disparity in evidence, jury instructions are usually sufficient to minimize evidentiary disparities).

This case does not suggest an "extreme case" of evidentiary disparity that would require

severance. The crimes charged in the conspiracy were interdependent and each member of the conspiracy depended on the other to transport large shipments of cocaine. Like in Tarantino, the defendants were charged in the same conspiracies for essentially the same type of crimes, all in furtherance of the conspiracy. 846 F.2d at 1398. The evidence for each of the defendants is also largely the same, consisting of seizures of cocaine, surveillance, Colombian court-authorized intercepted telephone conversations in Colombia, and cooperating and/or government witness testimony. As set out above, there is substantial independent evidence linking Gasca to the overall drug-trafficking conspiracy, and because much of the evidence being used against Gasca is also being used against his co-defendants, Gasca fails to show that he faces substantial, undue prejudice by having a joint trial. Gasca also fails to show that his role in the conspiracy makes his case extreme enough to prevent the jury from properly compartmentalizing the evidence and thus warranting severance.

### B. No Bruton type statements will be introduced into evidence.

Gasca also contends that severance is required if Bruton type statements exist and will be entered into evidence. In Bruton, the Supreme Court held that a defendant's Sixth Amendment right to confrontation is violated by introducing into evidence a confession by a non-testifying co-defendant when the confession implicates the defendant. Bruton v. United States, 391 U.S. 123, 137 (1968). The Court in Burton mandated severance as it ruled that a cautionary jury instruction could not cure undue prejudice. See Id.

However, Bruton only applies to confessions of a co-defendant that are inadmissable against the defendant, it does not apply when evidence has an independent basis of admissibility, such as

the declaration of a co-conspirator.[2]  United States v. Archbold-Newball, 554 F.2d 665, 677 (5th Cir. 1977);  see also United States v. Coppola, 788 F.2d 303, 305 (5th Cir. 1986).   The government does not intend to introduce into evidence any extrajudicial confessions by a co-defendant implicating Gasca that would not be admissible under Bruton.

### III.    Conclusion

For all of the foregoing reasons, the Government respectfully requests that the motion to sever Defendant's trial from that of his co-defendants be denied.

Dated: August 3, 2007

        Respectfully submitted
        KEN BLANCO, Chief
        Narcotics and Dangerous Drug Section

        _____
        Patrick H. Hearn
        Trial Attorney
        Narcotics and Dangerous Drug Section
        U.S. Department of Justice
        1400 New York Avenue, N.W.
        Washington, D.C.  20005
        (202) 305-7606

---

[2] Co-conspirator's statements are admissible under Federal Rules of Evidence, 801(d)(2)(e) if : 1) statement made during the conspiracy; and 2) made in furtherance of the conspiracy.

CERTIFICATE OF SERVICE

The undersigned certifies that on August 3, 2007, the Government's Defendant's Motion to Severe was sent via fax to Guasca's attorney, Joseph Conte at 202-628-0249.

 

Patrick H. Hearn
Trial Attorney
U.S. Department of Justice
Narcotic and Dangerous Drug Section