UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | : | Cr. No. 04 CR. 114 (RBW) |
| | : | |
| V. | : | |
| HERNAN GIRLADO-SERNA | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY TO MOTION TO
INTERVENE UNDER CRIME VICTIMS RIGHTS ACT**

**INTRODUCTION**

The Crime Victim's Rights Act ("CVRA") is expressly limited to persons who were "directly and proximately harmed as the result of the commission of a Federal offense. . . . " 18 U.S. Code Section 3771(e). The defendant in this case was charged in a non-speaking Superseding Indictment with a conspiracy to manufacture and distribute cocaine, knowing or intending that it would be unlawfully imported into the United States. The theory of the case – as embodied in the agreed upon Statement of Facts – is that the defendant's Auto-Self Defense (AUC) group imposed "taxes" on drug traffickers operating in its zone of control in Colombia, South America and in return provided protection and/or security for these activities from the Colombian Government, left wing paramilitaries, and other criminal groups. Neither the Superseding Indictment nor the Statement of Fact alleges that the protection of cocaine cultivation was a part of the conspiracy. Likewise, no violent acts are alleged to have been taken during, or in furtherance of the charged conspiracy.

The putative interveners contend nonetheless that former M-19 guerilla Julio Henriquez was killed because he had recently formed a group that offered an alternative to cocaine production to farmers in the defendant's region. Even assuming *arguendo* the truth of these

1

allegations, in order to bridge the legal and factual chasm that separates the defendant's alleged conduct (providing protection and/or security) and the murder, the interveners are asking this Court to take the unprecedented step of imputing as an object of the drug trafficking conspiracy the goal of killing anyone who was in any way opposed to cocaine cultivation. This is the antithesis of the "direct and proximate" requirement contained in the CVRA and accordingly, the intervener's motion should be denied. [1]

## FACTUAL BACKGROUND

The interveners now have access to the Plea Agreement and Statement of Facts in this case. They have selectively culled through these documents in an effort to support the proposition that it was an object of the drug conspiracy to "protect it from impediments like Mr. Henriquez." See Movants Further Submission DE 508 at p. 3. A review of the actual factual representations, however, reveal that the defendant's AUC group provided "protection" for drug traffickers in their region from Colombian law enforcement, left wing paramilitary groups (such as the FARC), and other criminal elements. The operative paragraphs of the factual statement provide in relevant part as follows:

> 6. In exchange for these taxes, the ACMG/Bloque Tayrona ensured that the traffickers were not molested by left-wing paramilitary groups or other criminal elements, and would keep a lookout for law enforcement presence in the area. As part of this security, the defendant or other organizational members at the defendant's direction would coordinate and make arrangements with the "urban commanders" in his area . . . to ensure that ACMG or AUC troops would be present in the area to provide additional perimeter security during the actual loading of the cocaine into the go-fast boats; to perform surveillance on Colombian law enforcement authorities and rival drug trafficking groups;

---

[1] The defense does not believe that the law supports the intervener's assertion that the underlying facts of the defendant's Colombian conviction are admissible against him in a criminal case. See United States v. Morrow, 537 F.2d 120 (5th Cir. 1976)(fact of prior conviction admissible in a criminal trial but underlying facts were excluded). A trial under the Colombian criminal justice system is not a full adversary proceeding and even though the defendant is a foreign national he is entitled to the protections of the due process clause. Boumediene v. Bush, 553 U.S. 723 (2008). This issue need not be resolved if the Court determines that the interveners have alleged insufficient facts to establish their status as victims under the CVRA.

and to monitor and relay communications with various units of the ACMG/Bloque Tayrona.

7. In summary, in the course of the defendant's activities leading the organization, including those activities with other members of the ACMG/Bloque Tayrona, the defendant came to learn the following: that large quantities of cocaine, amounting to more than 1500 kilograms either transited through or were manufactured in the ACMB/Bloque Tayrona's area of control and were subject to taxation; that in exchange for receipt of the taxes, the laboratories where the cocaine was manufactured were allowed to operate, and that cocaine transiting through the area was allowed to pass, and that both activities were provided protection from insurgent groups, other criminals, and to a certain extent drug control efforts of the Colombian government. . . . .

See Statement of Facts DE 505.

There is no mention in the agreed upon facts – directly, indirectly or otherwise – of the AUC providing protection for the cultivation of cocaine in its zone and certainly no reference to the conspiracy taking affirmative violent actions against anyone who opposed cultivation. That gloss which the interveners seek to have this Court superimpose as an object of the conspiracy is simply unsupported by the circumstances of the case.

## LEGAL ANALYSIS

The CVRA's "direct and proximate" nexus requirement and the cases interpreting that provision have been examined by the parties at length. The majority of courts have taken the view that the elements of the criminal offense controls for purposes of deciding who is a victim. See, e.g., United States v. Sharp, 463 F.Supp.2d 556 (E.D. Va. 2006). Thus, to establish victim status:

> at least one of the elements of the offense must be a but-for cause of the "crime victim's" harm, and the harm must be "a reasonably foreseeable consequence of the criminal conduct." *In re Fisher,* 640 F.3d 645, 648 (5th Cir.2011); *see also In re Rendon Galvis,* 564 F.3d at 175 (noting the "direct and proximate harm" requirement is analogous to the "but for" and "proximate cause" analyses used in tort law). . .
>
> The "direct" harm element "requires that the harm to the victim be *closely related* to the conduct inherent to the offense, *rather than* merely *tangentially linked*." *In re McNulty,*

> 597 F.3d at 352 (emphasis added). The harm to the victim must have been " 'caused by the specific conduct that is the basis of the defendant's offense of conviction."

United States v. Credit Suisse AG, 2014 WL 5026739, at *4 (E.D. Va. Sept. 29, 2014).

In this case, the defendant was not charged in the Superseding Indictment with committing a murder in furtherance of a drug trafficking conspiracy. Moreover, there are no facts in the Superseding Indictment alleging violence as a manner and means of the conspiracy. Likewise, there is no overt act(s) alleged relating to violence generally or to the murder of Henriquez specifically. Thus, on its face there is no relationship between the charged offense and the putative victim.

Even assuming *arguendo* that this Court should examine the Statement of Facts in this case to determine who was "directly and proximately" harmed, there is no "close" causal connection between the conduct of providing security and/or protection for drug transporters and the murder of someone who opposed cocaine cultivation. The Statement of Facts in this case recognizes that the zone controlled by the Bloque Tayrona "was the same areas used by individuals involved in the growing, processing, manufacturing, and transportation of cocaine." See DE 505 at para. 2. There is no allegation, however, and no agreed upon facts to support the conclusion that protecting the cultivation of cocaine was a part of the charged conspiracy.

The interveners are left only with the speculation that the defendant's conspiracy somehow encompassed the goal of "eliminating impediments like Mr. Henriquez . . . when [Hernan Giraldo] admitted he was paid to provide protection" to the drug trafficking conspiracy. See Movants Further Submission DE 508 at p. 6. This argument asks the Court for far too much, for in order to hold that the murder was "directly and proximately" caused by the drug trafficking offense, this Court would have to unilaterally amend the Superseding Indictment by adding as a conspiratorial objective the murder of anyone opposed to cocaine cultivation. There is no factual

4

basis to support the intervener's argument and as a matter of law this Court should not impute an additional object to the drug conspiracy.  See Grunewald v. United States, 353 U.S. 391(1957)(holding that an agreement to conceal the existence of a conspiracy would not be inferred).[2]

## CONCLUSION

The interveners seek to be declared victims of the defendant's drug trafficking conspiracy under circumstances almost identical to those that were unanimously rejected by the Second Circuit Court of Appeals in In Re Galvis Rendon, 564 F.3d 170 (2d Cir. 2009). This Court should likewise deny the motion to intervene.

                Respectfully submitted

*Robert Feitel*

_____
Robert Feitel, Esquire
Law Office of Robert Feitel
1712 N Street, N.W.
Washington, D.C.  20009
D.C. Bar No. 366673
202-450-6133 (office)
202-255-6637 (cellular)
RF@RFeitelLaw.com

---

[2] The defendant in Grunewald was charged with a tax fraud conspiracy and witness tampering. The defense moved to dismiss the case on statute of limitations grounds, which ultimately required the court to determine when the conspiracy ended. The Government argued that the case was not time barred because of certain acts taken to conceal the existence of the conspiracy. The Supreme Court rejected that argument, noting that despite the existence of actual instances of efforts by the co-conspirators to conceal their crime, it would not impute an object to conceal the conspiracy. "Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators." Grunewald, 353 U.S. at 401 (Jackson, concurring).

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was sent, via email to Department of Justice Trial Attorney Paul Laymon at the Narcotic and Dangerous Drug Section and to Leo Cunningham, counsel for the Movants, via the Electronic Filing System, this 20th day of July, 2015.

*Robert Feitel*

_____
Robert Feitel