UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | : | Cr. No. 04 CR. 114 (RBW) |
| v. | : | |
| HERNAN GIRALDO-SERNA | : | |
| Defendant | : | |

## DEFENDANT HERNAN GIRALDO'S
## POST REMAND MEMORANDUM

### INTRODUCTION

This case is before the Court on remand from the *per curiam* decision of the United States Court of Appeals for the District of Columbia Circuit dated October 16, 2015. The Court of Appeals granted the Mandamus Petition filed by the family of Julio Henriquez, putative interveners under the Crime Victims Rights Act (CVRA). The Court of Appeals remanded so that this Court could consider whether a "but-for-cause of the murder could have been Henríquez's leadership of an organization dedicated to ending the production of coca within the region under the drug conspiracy's direct control." (internal quotations omitted).

Prior to this point in the proceedings, the defense assumed *arguendo*, the truth of the statements elicited during the judicial proceedings in Colombia, which were submitted by the Movants in support of their claim. This was done as a matter of expediency, to permit this Court to rule as a matter of law, without having to resolve disputed issues of fact. In light of the Court of Appeals' ruling, however, the defendant can no longer make this concession. As explained more fully herein, due process does not permit Movants to use these statements to establish status under the CVRA because the defendant was not afforded a "full and fair opportunity" to challenge the testimony. Accordingly, the interveners must now be required to prove the motive for the Henriquez murder before this Court by other competent evidence.

1

**BACKGROUND**

Julio Henriquez was an ex member of the terrorist group M-19, when he was allegedly kidnapped on February 4, 2001 from the village of El Calabazo in Colombia, South America. His body was subsequently recovered as the result of information provided by the defendant during the Justice and Peace process in Colombia. The Movants contend that the motive for the disappearance and murder was that one month earlier - in January of 2001 - Henriquez formed a group called Madre Tierra ("Mother Earth) to oppose the cultivation of cocaine in the region. The Movants further assert that the defendant was so angered by the formation of this group that he ordered Henriquez's murder. The defendant and another Colombian identified as Leonidas Acosta Angel were ultimately convicted of the offense of conspiracy to commit aggravated forced disappearance. The defendant was sentenced to thirty years in jail.

In prior pleadings before this Court, the Movants have attempted to establish this motive by submitting portions of the statements made by various persons to the prosecutors in Colombia. A review of the reports reveals that two ex paramilitaries provided the only "evidence" as to motive. They are: Alberto Manjarres Charris and Carmelo Sierra Urbina. Both statements were taken in a question and answer format under oath, but it does not appear that counsel for defendant Hernan Giraldo participated in that process or thereafter had the opportunity to cross-examine either witness.

Alberto Manjarrez Charris made a statement to the Colombian prosecutors on August 21, 2003, in connection with his demobilization as a member of the AUC. During that interview, he was asked about the disappearance of a person from the town of Calabazo. In response, Manjarrez Charris stated that in 2002 he was present at a "camp" with the defendant and other AUC members. According to Manjarrez Charris, the defendant explained that some months

earlier there was a person who he had told to leave the area and when he did not, the defendant

sent his men "to take care of him."  Manjarrez Charris did not know the name of the alleged

victim and when the prosecutor asked about motive, the following question and answer took

place:

> QUESTION: Do you know the reason HERNAN GIRALDO had to send people to kill
> the person from the NGO OF CALABAZO? DO YOU KNOW IT?
> ANSWER:  I do not know the reasons.

A copy of this statement appears in Exhibit 14 of Movant's Motion To Intervene.

Carmelo Daniel Sierra Urbina gave his testimony on September 25, 2003 before a

prosecutor in Bogota, Colombia. Sierra Urbina, who was also an ex member of the AUC, stated

that he was in the village of El Calabazo in 2001 when there was the disappearance of a person

who had been giving lectures as to the eradication of coca crops. The witness claimed that a

message to leave the area had been sent by Hernan Giraldo, although there was no questioning

by the prosecutor as to the basis for the witness' information. The prosecutor then asked about

the events and received the following reply:

> ANSWER:  Obviously, MR. HERNAN did not agree with it, what that gentleman was
> telling the peasants, because he grows coca, and if they invaded his lands, that is
> sufficient reason to kill somebody, and the mafia does not forgive.

Sierra Urbina was then was asked about the requirement that anyone carrying out activity

in the region needed a permit from the defendant. He replied as follows:

> MR. GIRALDO is very clear about the urban structure. Any seller who enters Guachaco
> or Calabazo, any seller of brooms or whatever, has to carry an identification card that
> identifies him as such . . . but the person who does not wear the card and does not say the
> reasons or since when he is selling . . . and he has suspicious behavior as if he were an
> informant or something, the order is to kill him.

A copy of this statement appears in Exhibit 8 of Movant's Motion To Intervene.

Independent of the hearsay problems inherent in these two statements, they are at best

ambiguous about motive. The remaining materials submitted by the Movants do not further elucidate the reason for Henriquez's disappearance. One witness, for example, observed Henriquez being driven away in a white colored truck. Other witnesses connect the truck to the AUC group operating in that area. This provides no insight into why the crime took place. Other testimonies appear to be irrelevant. For example, Henriquez's wife testified that she learned of the murder through a telephone call, but was told that the "author" of the murder was a Colombian drug trafficker named Jairo Musso. The testimony of another witness may well contradict the Movant's claim that Henriquez had previously been threatened by the defendant. Julio Nelson de la Cruz Barros, a resident of El Calabazo who organized the community meetings for Henriquez, testified that he had not heard that Henriquez had been threatened as the result of his organizational activities. In any event, the issue is academic because all of this testimony was given under circumstances where the defendant was not given a full and fair opportunity to confront his accusers.

## ANALYSIS

In order to achieve status as "victims" under the CVRA, the Movants must establish that the international drug conspiracy involving the defendant was the "direct and proximate" cause of the Henriquez murder. The Movant's theory is that Henriquez's opposition to cocaine cultivation was the "but for" cause of his death. The burden of proving that motive now rests with the Movants. In that regard, this Court should not rely upon the statements made during the Colombian process.

Any consideration of this issue should begin with the recognition that a defendant in a United States has the right to due process at every stage of a criminal case from its inception until sentencing. "Due process requires that a defendant be given an opportunity to assure the

accurate presentation of reliable sentencing information to the district court." United States v. Romano, 825 F.2d 725, 728 (2d Cir. 1987). Due process likewise applies to participation by alleged crime victims in criminal proceedings. See United States v. Atlantic States Cast Iron Pipe Co., 612 F.Supp. 2d 453, 497 (D.N.J. 2009)("[w]hen participation of a statutory crime victim or other affected person becomes an issue in the sentencing process, the court facing those issues must not lose sight of the rights of the defendant."). In order to determine whether the Movants have status under the CVRA, this Court must be satisfied that there is sufficient competent evidence to establish that the "but for" motive of this case was Henriquez's opposition to cocaine cultivation.

This Court should not accept the proffered testimony of witnesses in the Colombian judicial process to establish the alleged motive. It has long been recognized that the procedures utilized in foreign judicial systems frequently do not comport with the requirements of United States law. Thus, for example, in Small v. United States, 544 U.S. 385 (2005), the Supreme Court ruled that a prior felony conviction in Japan could not serve as the predicate offense for possession of a firearm by a previously convicted felon. In assessing why a foreign conviction was not intended to be a disqualifying prior conviction, the Supreme Court noted that:

> considered as a group, foreign convictions differ from domestic convictions in important ways. Past foreign convictions for crimes punishable by more than one year's imprisonment may include a conviction for conduct that domestic laws would permit, for example, for engaging in economic conduct that our society might encourage. . . . They would include a conviction from a legal system that is inconsistent with an American understanding of fairness.

544 U.S. at 389.

Similarly, in United States v. Concha, 233 F.3d 1249 (10th Cir. 2003), the Court concluded that foreign convictions were not predicate offenses under the Armed Career Criminal Act. "We are further reluctant to allow foreign convictions to be used as predicate offenses for an

Armed Career Criminal Act conviction in the absence of a clear statutory directive because foreign criminal defendants are not necessarily given the same constitutional protections that we take for granted in this country." 233 F.3d at 1254.

These concerns apply with particular force to the circumstances presented by the CVRA motion. First, the statements made by the various witnesses were not given during testimony before a public tribunal, or an impartial judge. Rather, they were made in private before a Colombian prosecutor. Moreover, the defendant was not present for the statements, nor was his counsel present to verify that the record of proceedings was complete. Likewise, there is no indication that the defendant was afforded the opportunity to confront and/or cross-examine the witnesses or that any of the other safeguards generally required to assure and/or test the veracity of testimony were present. The statements – which are ambiguous about motive to begin with - thus also lack sufficient indicia of trustworthiness to satisfy the requirements of due process.

Finally, even the fact of the defendant's conviction in Colombia would not have a preclusive effect in this court under the principles of *res judicata* or *collateral estoppel* because the issue of "motive" was not necessarily decided in the Colombian criminal case. See, e.g., Hurst v. Socialist People's Libyan Arab Jamahiriya, 474 F.Supp.2d 19 (D.D.C. 2007)(for collateral estoppel to apply, an issue must have been "actually litigated").

## CONCLUSION

The burden of proving status under the CVRA now returns to the Movants and they must present sufficiently clear, unambiguous, and competent testimony before this Court in order to prevail on this remand. The manner in which they choose to prove the motive in this case is

within their discretion, but this Court should not accept any evidence of motive based upon the

statements adduced during the Colombian process. Due process demands no less.

Respectfully submitted

*Robert Feitel*

_____

Robert Feitel, Esquire
Law Office of Robert Feitel
1712 N Street, N.W.
Washington, D.C.  20009
D.C. Bar No. 366673
202-450-6133 (office)
202-255-6637 (cellular)
RF@RFeitelLaw.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was sent, via email to Department of Justice Trial Attorney Paul Laymon at the Narcotic and Dangerous Drug Section and to Leo Cunningham, counsel for the Movants, via the Electronic Filing System, this 25th day of January, 2016.


*Robert Feitel*

_____
Robert Feitel